IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS ROBERT WHEELER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | No. 13 C 1036 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Thomas Robert Wheeler's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. Nos. 13, 14] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

In July 2010, Wheeler filed claims for both Disability Insurance Benefits and Supplemental Security Income, alleging disability from HIV infection, left posterior tibial tendonitis and ankle swelling, and cognitive deficit since March 1, 2010. The claim was denied initially and upon reconsideration, after which he timely

requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 22, 2011. Claimant personally appeared and testified at the hearing and was represented by counsel. Medical Expert Ashol Jilhewar and vocational expert Grace Gainforte also testified.

On October 28, 2011, the ALJ found Wheeler to have been disabled from March 1, 2010 through May 5, 2011 but found him not to be disabled beginning May 6, 2011. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[1]

### A. Medical Evidence

On June 10, 2011, Lisa M. Watt, Ph.D. completed a neuropsychological assessment of Wheeler's learning disability and recent short- and long-term memory loss associated with HIV. Wheeler scored in the low average range for general intellectual functioning and phonemic verbal fluency, and he had moderate impairment in the areas of comprehension of social situations and abstract verbal reasoning. Wheeler was mildly impaired in the measure of attention and simple working memory and moderately impaired on a more complex measure of working memory. Wheeler was severely impaired with regard to immediate recall in a verbal list-learning task, and his delayed recall was moderately impaired. He was severely impaired in both immediate and delayed recall on a measure of new learning and

---
[1] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

recall of complex visual information. In terms of psychosocial functioning, Dr. Watt concluded that Wheeler met the criteria for generalized anxiety disorder and dysthymic disorder. She noted that Wheeler was not being treated for anxiety or depression and recommended that he be assessed for suitability for medication for those conditions.

Dr. Watt also administered a test measuring the speed of motor responding involving finger tapping, and Wheeler scored in the low average range with his right (dominant) hand and average with his left. Wheeler scored in the severely impaired range with both hands on a measure of fine motor dexterity.

Wheeler was diagnosed with widespread mild to severe cognitive deficits likely secondary to HIV and a learning disability in the areas of math, spelling, and reading. Dr. Watt concluded that Wheeler was unlikely to be able to obtain and maintain competitive employment and that he was a strong candidate for Social Security Disability Insurance.

Wheeler's treating physician, Dr. David Slagle, M.D., opined in an August 17, 2011 letter that Claimant had been totally disabled since October 2010, based on widespread cognitive deficits demonstrated in the June 2011 neuropsychological report, which he concluded were "likely a mixture of HIV-associated neurocognitive dysfunction/early HIV-associated dementia and life-long learning disability." (R. 605.) He also stated that Wheeler's ambulation was "affected by HIV-associated peripheral nerve disease . . . and left posterior tibial tendinitis." (*Id.*) Dr. Slagle believed that prolonged standing and walking would worsen his chronic peripheral

3

neuropathy pain. He concluded that treatment would be unlikely to result in significant improvement of either Wheeler's cognitive function or his neuropathy pain.

## C. <u>Vocational Expert Testimony</u>

The Vocational Expert ("VE") testified that Wheeler's past work as a cook was medium and skilled, and as a dietary aide was medium and unskilled, and as a stocker/loader/material handler was heavy and semi-skilled. The ALJ then asked the VE whether a hypothetical person with the same age, education, work experience as Plaintiff, and a residual functional capacity ("RFC") limiting him to unskilled, simple, routine, repetitive sedentary work with certain additional postural and other limitations, could perform any of Plaintiff's past work. The VE said that the person could not, but other jobs would be available, including food and beverage order clerk, waxer in the glass and plastics industry, and polisher in the optical goods industry. Upon questioning by Wheeler's attorney, the VE testified that if the person had an additional limitation of only handling, fingering, holding, and grasping occasionally rather than frequently, the listed jobs would be eliminated.

## D. <u>ALJ Decision</u>

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since his onset date of March 1, 2010. At step two, the ALJ concluded that from the period of March 1, 2010 to May 5, 2011, Claimant had severe impairments of HIV infection, left posterior tibial tendonitis and ankle

4

swelling, and cognitive deficit. At step three, she found that during the same period of time, his left posterior tibial tendonitis medically equaled the criteria of Listing 1.02(A). She found that the period of disability had ended on May 5, 2011, based on Dr. Slagle's report of that day noting no complaints of ankle pain or limited ambulation and Wheeler's testimony that he can stand for at least an hour and walks for ten minutes on a treadmill. She also noted that in his August 2011 letter, Dr. Slagle did not mention Plaintiff's tendonitis.

The ALJ determined that Wheeler had not developed any new impairments since May 6, 2011, the date he was found to be last disabled, and therefore his present severe impairments were the same as those present from March 1, 2010 to May 5, 2011. She then concluded that none of those impairments, alone or in combination, met or medically equaled a Listing. At step four, the ALJ found that Claimant retained the RFC to perform sedentary work, with limitations on never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; occasionally using a motor vehicle; and limited to unskilled work involving simple, routing, and repetitive tasks in jobs that are not fast-paced and are low-stress in nature. At step five, based upon the VE's testimony and Wheeler's age, education, work experience and RFC, the ALJ concluded that he can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

# DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

7

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

The only error Plaintiff assigns to the ALJ's decision is her alleged failure to consider his deficiencies in fine and gross manipulation in concluding that Wheeler was not disabled. The ALJ discounted the findings of Dr. Watt in part because Wheeler did not seek her opinion in order to obtain treatment, but rather after an attorney referral for the purpose of generating evidence. The ALJ acknowledged that "such evidence is certainly legitimate and deserves due consideration," (R. 22), but stated that the context of the report cannot be disregarded, particularly where "it stands wholly unsupported by the longitudinal treatment record or any outside complaints voiced to treating sources." (*Id.*)

Plaintiff's brief goes on at length to discredit the ALJ's apparently mistaken assumption that the neuropsychological assessment was performed at the request of counsel, as opposed to his treating physician, Dr. Slagle. But Plaintiff does not fully address the larger issues with Dr. Watt's report described by the ALJ, namely that it was not obtained in an effort to seek treatment, was unsupported by any other evidence in the record, and did not reflect complaints made to any other treating sources. In reply, Plaintiff seeks to diminish the effect of Wheeler's failure to complain to any other treaters about this alleged impairment:

> The fact that this lack of fine motor dexterity was not reported to any physician is no different than if a patient did not report to his or her physician that he or she could not run fast, jump high, lacks the coordination to hit a tennis ball, does not have the endurance to run a marathon, cannot shuffle a deck of cards and quickly deal them to other players, does not have reflexes quick enough to engage in martial arts, is not able to bench press significant weight, etc., etc., etc. Severe impairment of motor dexterity is not a medical condition. Rather, it is a lack of skill. In all likelihood, this is something that the claimant has had all of his life and something that he has learned to live with.

(Pl.'s Reply Br. at 2.)

Plaintiff's argument is unpersuasive. The ALJ's decision did not suggest that Plaintiff was required to report to a physician an inability to perform remarkable feats of strength and agility. But that is not Wheeler's alleged basis for seeking disability benefits. He claims that he suffers from a severe impairment in his fine motor dexterity, which would tend to manifest itself in his day-to-day functioning. Plaintiff's brief offers no record evidence suggesting that he has any difficulty performing manual tasks in his daily life, nor has he shown that he has complained

9

about what would in fact be a medically severe impairment[2] to any treating source. Therefore, substantial evidence supported the ALJ's decision not to give any weight to that aspect of Dr. Watt's opinion, which was not corroborated by any other evidence in the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. Nos. 13, 14] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

**SO ORDERED.**          **ENTERED:**

*/s/ Maria Valdez*

**DATE: December 19, 2014**

                         **HON. MARIA VALDEZ**
                         **United States Magistrate Judge**

---

[2] "[T]he inability to perform fine and gross movements effectively on a sustained basis" is included under the SSA's Listings governing disorders of the musculoskeletal system. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00.